FERNALD ATOMIC TRADES
AND LABOR COUNCIL,
AFL–CIO, Plaintiff,

v.

FERNALD ENVIRONMENTAL RESTO-
RATION MANAGEMENT CORPO-
RATION, et al., Defendants.

No. C–1–93–664.

United States District Court,
S.D. Ohio, W.D.

Jan. 26, 1994.

Robert Franklin Laufman, Cincinnati, OH, for plaintiff.

Dean Edward Denlinger, Denlinger, Rosenthal & Greenberg, Cincinnati, OH, for Fernald Environmental Restoration Management Corp.

Gary Moore Eby, Cincinnati, OH, for Greater Cincinnati Bldg. & Const. Trades Council.

## ORDER DENYING PLAINTIFF'S REQUEST FOR A PRELIMINARY INJUNCTION

SPIEGEL, District Judge.

This matter is before the Court on the Plaintiff, Fernald Atomic Trades and Labor Council, AFL–CIO's ("FAT & LC") request for a preliminary injunction found in Plaintiff's First Amended Complaint (doc. 20), the Response of Defendant Greater Cincinnati Building and Construction Trades Council ("Building Trades") (doc. 26), the Motion by Defendant FERMCO for an Order For Summary Denial of the Preliminary Injunction (doc. 29), the Plaintiff's Response to Defendants' Request that the Court Bless FERMCO's Health and Safety Program (doc. 42), the Plaintiff's Motion to Lodge (doc. 51), the Plaintiff's Proposed Findings of Fact and Conclusions of Law (doc. 46), Defendant Building Trades's Proposed Findings of Fact and Conclusions of Law (doc. 36), and Defendant FERMCO's Proposed Findings of Fact and Conclusions of Law (doc. 38). A hearing was held on this motion on November 29, 1993.

## BACKGROUND

The Plaintiff is a labor union which represents some of the employees at Fernald who are engaged in the process of cleaning up that nuclear facility. The Defendant Fernald Environmental Restoration Management Corporation ("FERMCO") is overseeing the cleanup under contract with the Department of Energy of the United States of America. Defendant Greater Cincinnati Building and Construction Trades Council ("Building Trades") is a union which also represents workers at the Fernald site.

On September 24, 1993, the Plaintiff filed suit under 29 U.S.C. § 185 seeking relief, including a temporary restraining order and a preliminary injunction. Primarily the Plaintiff was seeking enforcement of an arbitration clause in their Collective Bargaining Agreement ("CBA"), injunction against the replacement of FAT & LC workers, and injunction to enforce health and safety regulations. We declined to grant a temporary restraining order. However, on September 28, 1993, we did issue the following orders by agreement of the parties:

> The Plaintiff and the Defendant will continue to negotiate in good faith to reach a new contract.

> The Plaintiff and the Defendant agree to submit to arbitration before the American Arbitration Association, the grievances listed in Paragraph 25 of Plaintiff's Complaint to Compel Arbitration (doc. 1). The Defendant reserves the right to challenge, as a threshold issue before the arbiter, the Plaintiff's right to arbitrate these grievances under the FAT & LC CBA.

Order Denying Motion for Temporary Restraining Order, Document 5 at 1.

At the TRO conference there was considerable debate concerning the adequacy of the health and safety measures under FERMCO's Comprehensive Environmental Occupational Safety and Health Program ("CEOSHP"). As a result the parties agreed to the following order:

> The health and safety measures required by Article IV of FAT & LC's Collective Bargaining Agreement ("FAT & LC CBA") will remain effective for all union employees at Fernald, indefinitely. In the event that the parties fail to renegotiate a Collective Bargaining Agreement, FERMCO may implement adequate alternative health and safety procedures, after having given FAT & LC sixty days notice of the particulars of the new procedures. This agreement in no way diminishes the protection provided to the members of the Cincinnati Building and Construction Trades Council ("GCBCTC") under their own collective bargaining agreement with FERMCO. Further, this order imposes

no duties on members of the GCBCTC with respect to union representation by FAT & LC.

Order Denying Motion for Temporary Restraining Order, Document 5 at 1.

Our concerns for the health and safety of workers and residents near Fernald were again raised at a preliminary hearing on the Plaintiff's Motion for a Preliminary Injunction, held November 3, 1993. The Court issued an Order on November 4, 1993, which stated in part:

In response to the Court's continuing concern for the safety of workers at Fernald and of the public at large, the parties will submit by November 10, 1993, a proposed joint order for obtaining assistance from the Department of Energy in resolving the parties' controversy over safety standards under the separate collective bargaining agreements. The Court welcomes Department of Energy's guidance as to the most appropriate safety standards for all workers at Fernald.

Order Continuing Plaintiff's Motion for Preliminary Injunction, Document 32 at 2–3.

On November 30, 1993, J. Phil Hamric, the Manager of the Department of Energy, Fernald Environmental Management Project wrote a letter to Mr. Nicholas Kaufman, the President of FERMCO. Although apparently unrelated to our Order of November 4, 1993, this letter addresses some of the issues raised in this litigation. Mr. Hamric expressed concerns that several elements were lacking in FERMCO's CEOSHP. The letter states that the CEOSHP "appears to lack the provisions which adequately integrate and empower workers in the development and implementation of a comprehensive safety and health program." The letter went on to list specific deficiencies, including:

[P]olicy, procedures, and practices regarding the protection of workers who raise health and safety concerns ...

[P]olicy, procedures, and practices regarding the employees right to decline to perform assigned work ...

[P]olicy, procedures, and practices regarding the mechanism(s) by which the workers can: (a) raise and address safety and health concerns; and (b) have access to needed information regarding safety and health programs and activities such as the results of accident/incident investigations.

[P]olicy, procedures, and practices regarding the site medical surveillance program ...

[P]olicy, procedures, and practices regarding the means by which site management and workers interface to address health issues and to jointly develop timely and innovative solutions to the identified concerns (e.g. Joint Executive Safety and Health Committee).

[P]olicy, procedures and practices which regard providing for personnel protective equipment ...

Hamric Letter at 2. The letter goes on to require a response from FERMCO by December 15.

On December 1, 1993, Thomas Grumbly, Assistant Department of Energy Secretary for Environmental Restoration and Waste Management appeared before Congressman Dingell's Subcommittee on Oversight and Investigation, a Subcommittee of the House Energy and Commerce Committee. The Assistant Secretary specifically mentioned Mr. Hamric's letter. Mr. Grumbly's testimony was highly critical of FERMCO's operation of Fernald and suggested that "if FERMCO's performance is not adequate ... there is a high probability we will begin the process of finding a new contractor at Fernald." Under questioning by Mr. Dingell, Mr. Kaufman admitted problems with Fernald's health and safety programs. These events took place against a background of an investigation of an alleged leak of uranium hexafluoride gas at Fernald, which was reported to DOE by the Plaintiff, FAT & LC.

## DISCUSSION

### A. Health and Safety

We are compelled to first address questions of health and safety raised by the Plaintiff. This Court is all too familiar with the health and safety problems at Fernald. *See In re Fernald Litigation*, No. C–1–85–149, 1989 WL 267039 (S.D. Ohio Sept. 29, 1989). Therefore, out of caution, we reaffirm our

Order of September 28, 1993, that the health and safety provisions contained in Article IV of the Collective Bargaining Agreement between FAT & LC and FERMCO remain in effect for all workers at Fernald. As we indicated in that order, this does not negate any additional safety procedures provided under any other collective bargaining agreement between FERMCO and any other union at Fernald.

### B. Arbitration

■ The Plaintiff has requested a preliminary injunction requiring the Defendant FERMCO to submit to arbitration of their dispute over the application of provisions in their CBA. However, from our first meeting in September, both FAT & LC and FERMCO have agreed to proceed expeditiously to arbitration at least on the threshold issue of whether this is an arbitrable dispute under their collective bargaining agreement. A decision on this issue is fundamental, since this Court's jurisdiction has been posited, at least in part, on its power under 29 U.S.C. § 185 to enjoin FERMCO to arbitrate in compliance with its collective bargaining agreement. We assume that this arbitration is now in progress. Therefore, we need not enjoin the parties to undertake an arbitration to which they have willingly agreed.

### C. Layoffs and Replacement

■ The heart of this labor dispute is a conflict between two unions concerning the allocation of work by FERMCO at Fernald. The Plaintiff has asked the Court to enjoin the replacement by Building Trades members of any FAT & LC workers who have been or will be laid off at Fernald. FAT & LC argues that experienced members of their union, who are qualified to perform various jobs in the Fernald environmental restoration are being replaced by members of the Building Trades. The Defendants argue that as the work at Fernald changes from the operation and maintenance of a processing facility to its dismantling and to environmental restoration, workers with different skills are required. They further contend that the management at Fernald has always had the right to decide the assignment of work between FAT & LC and the Building Trades unions. Finally, the Plaintiff maintains that Congress and the Department of Energy have expressed a desire that FERMCO employ experienced environmental workers in the cleanup of its various sites.

The Norris–Laguardia Act, 29 U.S.C. §§ 101 *et seq.*, severely limits the jurisdiction of the federal courts to issue relief in cases involving labor disputes. However, the Supreme Court has recognized a "narrow exception" to the anti-injunction policy of the Norris–Laguardia Act in *Boys Markets, Inc. v. Retail Clerks Local 770,* 398 U.S. 235, 254, 90 S.Ct. 1583, 1594, 26 L.Ed.2d 199 (1970) (where contract requires arbitration and traditional equitable bases for injunctive relief have been met). That exception to Norris–Laguardia has been clarified in the Sixth Circuit:

> The *Boys Markets* criteria are:
>
> (1) the underlying grievance is one which the parties are contractually bound to arbitrate; and
>
> (2) injunctive relief is justified under ordinary principles of equity; namely
>
> (a) breaches of the agreement have been threatened and will be committed or are occurring and will continue;
>
> (b) the party will suffer irreparable harm as a result; and
>
> (c) the balance of hardships weighs in favor of an injunction.

*Cincinnati Pressmen Union v. Gannet Satellite,* 737 F.Supp. 473, 475 n. 1 (S.D.Ohio 1990) *citing Aluminum Workers Int'l v. Consolidated Aluminum Corp.,* 696 F.2d 437, 442–44 (6th Cir.1982). Without rendering a decision concerning the other elements of the test, we hold that the traditional equitable requirement of "irreparable harm" is not met under the facts before us.

FAT & LC has offered three reasons for claiming irreparable harm:

> If an injunction is not issued, irreparable harm will result for any one of the following reasons:
>
> (a) the dilution of the experience workforce will imperil the health and safety of all employees—including FAT & LC members—who remain at the FEMP site;

(b) an arbitrator will be unable to issue a return to *status quo ante* without requiring the substitution of FAT & LC members for workers who were precipitously hired; and

(c) an injunction is merited because FERMCO's actions threaten to deprive workers of site experience which is itself a prerequisite for future work on the site.

Plaintiff's Proposed Findings of Fact and Law In Support of Preliminary Injunction, Document 46 at 51.

We will address each of the Plaintiff's claims in turn. Although, we do have health and safety concerns in regard to the FEMP site, we believe that we have addressed them in the order announced above concerning the continued enforcement of health and safety procedures contained in Article IV of the FAT & LC/FERMCO CBA, during the pendency of this action.

Second we address the Plaintiff's concerns regarding reinstatement. If the arbiter should conclude that the FAT & LC employees were wrongly replaced, this Court has no doubt concerning its ability to enforce the reinstatement, with back pay if necessary, of FAT & LC members. FERMCO is surely aware that to replace FAT & LC employees puts the Defendant in jeopardy of such a reinstatement.

Finally, if Court order reinstatement is warranted under the arbiter's interpretation of the CBA, there is no reason this Court would be bound by any "cite experience prerequisite" other than the finding that a FAT & LC employee was wrongly replaced. We are sure that this Court can fashion a combination of damages and injunctive relief which would put any of Plaintiff's members found to have been harmed in the same position occupied before his or her replacement.

### CONCLUSION

In our concern for the health and safety of the workers at Fernald and the public at large, we order the Defendant, FERMCO, to honor the health and safety provisions of Article IV of its CBA with FAT & LC. However, since the Plaintiff's claims, if any, can be adequately redressed through post trial remedies, we decline to order injunctive relief at this time. Accordingly, the Plaintiff's Motion for a Preliminary Injunction is denied.

SO ORDERED.